Metropolitan Theatre, Inc. vs. Providence Local #223, etc., et al. } Eq. No. 11986.

March 13, 1933.

WALSH, J. Heard on prayer for preliminary injunction.

The bill sets forth that the complainant is a corporation operating a theatre in the City of Providence; that every employee in said theatre is a stockholder in said corporation and is employed therein on a co-operative basis; that the respondents, labor unions and officers of the same, were offered a chance to have union men employed in said theatre on a co-operative basis; that the respondents refused to have union men employed on such basis; that respondents circulated circulars and placards calling the attention of the public to the fact that said theatre did not employ union labor; that said respondents patrolled and picketed the theatre of complainant, distributed circulars setting forth that said theatre did not employ union labor, and "by intimidation, duress and physical force" prevented prospective patrons from entering said theatre; that said respondents have attempted and are attempting to intimidate, by duress have attempted and are attempting to coerce and by physical force have attempted and are attempting to prevent the employees of said theatre from continuing in the employ of said theatre on a co-operative basis.

The bill concludes with a charge of wrongful and unjustifiable conspiracy.

In proof of the allegations in the bill, the petitioner introduced Mr. Williams, the manager of the theatre, who, although he knew practically all of the members of the respondent unions, could name but one instance where a picket interfered with a patron. He mentioned no instance where there was interference with an employee. Mr. Storin, resident manager of the theatre, who also knew most of the members of respondent unions, named two pickets whom he had observed attempting to interfere with a patron but the date and time of such interference as given by Mr. Storin raised strong doubt as to the presence of the pickets accused by him at the theatre at the times he mentioned. He, also, had no knowledge of any interference with an employee.

Mrs. Cooper, a patron, and wife of the motion picture operator employed by petitioner, testified that she was interfered with by a picket but her testimony was not convincing. Mrs. Cardinal, another patron, testified that a picket accosted her and told her, in substance, that it was dangerous for her to go into the theatre. Other employees of petitioner testified in corroboration of Mr. Williams and Mr. Storin.

There were two incidents upon which great stress was laid by petitioner. One, the presence of a truck, carrying placards stating that the Metropolitan Theatre did not employ union labor, on Chestnut Street on the opening day of the theatre. Petitioner claims that the truck stopped immediately in front of the theatre entrance and continually sounded its horn for some minutes; the other, that an employee of the theatre, one Desrosiers, was assaulted by one Raftery, a member of the union, in a restaurant almost directly across the street from the theatre, shortly after midnight and about one hour after the theatre was closed for the day. It appears that the truck was operated by one O'Hearn, who was a union sympathizer but not a member of either of respondents unions. The truck was used by O'Hearn to distribute the placards, stating that the petitioner employed non-union labor, in the South Providence and Atwells Avenue sections of the city. The testimony on this point tends to show that the truck was stopped just below the theatre entrance by police officers of the City of Providence for the inspection of licenses and that it did not remain on said street longer than was required for this purpose. The continuous blowing of the horn by the driver of the truck is not shown to our satisfaction. There were at least two police officers on duty at or near this theatre during the time that this alleged disturbance was taking place, yet neither was produced before us. As to the disturbance in the restaurant, we feel that, while Raftery was a member of the union, the testimony shows that Raftery was drunk and quarrelsome and that his principal grievance was against Jaffa, the waiter in the restaurant. It is significant that there is no testimony of any quarrel between Desrosiers and Raftery nor of any conversation relative to the labor trouble between them prior to the alleged assault. There was no testimony tending to show that this occurrence was in any way associated with Desrosier's or Raftery's connection with labor trouble at the theatre. We, consequently, do not feel that respondents should be charged with the responsibility for an unauthorized act committed by a drunken man, apart from the scene of labor trouble and dissociated from said labor trouble.

It appears from all the evidence that the respondents and pickets knew the law of this state as to what "peaceful picketing" was. While they were all interested in the outcome of this

case and their testimony was colored somewhat, unintentionally perhaps, as a consequence, their version of the occurrences complained of was supported by the probabilities.

A labor union has the right to persuade the public *by any lawful means* to patronize or refuse to patronize a place of business but this right is not superior to the right of the owner of the business to conduct such business free from unlawful interference. Picketing, if it is peaceful and unaccompanied by coercion, duress, or intimidation, is lawful. The attempt to unionize complainant's theatre may result in actual injury to complainant but it is not a legal injury unless the damage resulting therefrom is caused by a violation of a legal right of the complainant. There is a violation of such a legal right when coercive methods are used. Each case arising under this principle must be decided upon the consideration of the facts and of the rights of the opposing parties. There are two problems here, viz.: first What methods were used? and, second, Were the methods so used lawful or unlawful? The respondents gave notice to the public carrying placards and distributing circulars which contained a true statement of fact. This method was lawful. If there is clear and convincing evidence that, in addition to this lawful method, respondents accompanied their picketing by violence, intimidation, duress or physical force to such an extent as to interfere with the conduct of a business, then such methods are unlawful and should be restrained. While there is some evidence of unlawful method in the present case, it is not convincing. If there were unlawful methods used, it strikes us that the police, on duty at the place and during the times when the alleged violations occurred, would be in the best position to give us disinterested testimony. They were not summoned and did not appear. The two patrons produced, who claimed unlawful interference, were shown to have leanings at least, toward one of the interested parties. There was no evidence of interference unlawfully with any employees. Under such circumstances, there being no clear and convincing testimony of the use of unlawful methods and there being an express denial of the use of the same by respondents, we must conclude that the petitioner is not entitled to the relief prayed for.

Petition for preliminary injunction denied.

For complainant: George Triedman.

For respondent: J. G. Carroll, Lester T. Murphy.